UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

PEGGY L. GROSS,

        Plaintiff,                   Civil Action No. 15-11543
                                        Honorable Gerald E. Rosen
        v.                   Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO
GRANT PLAINTIFF'S MOTION TO REMAND [R. 13] AND
<u>DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [R. 15]</u>**

Plaintiff Peggy L. Gross appeals a final decision of defendant

Commissioner of Social Security ("Commissioner") denying her

applications for disability insurance benefits ("DIB") and supplemental

security income benefits ("SSI") under the Social Security Act (the "Act").

Gross filed a motion to remand, and the Commissioner filed a motion for

summary judgment, which were referred to this Court for a Report and

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  After review of the

record and a hearing on June 7, 2016, the Court finds that the

administrative law judge's ("ALJ") decision is not supported by substantial

evidence, and thus **RECOMMENDS**:

- **GRANTING** Gross's motion [R. 13];

- **DENYING** the Commissioner's motion [R. 15]; and

- **REMANDING** the Commissioner's decision for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.  BACKGROUND

### A.  Gross's Background and Disability Applications

Born August 28, 1972, Gross was 40 years old when she submitted her applications for disability benefits on July 17, 2012.  [R. 11-6, Tr. 171-72].  She last worked as a substitute teacher in 2010.  [R. 11-2, Tr. 35]. Gross alleges a disability onset date of July 17, 2012, claiming disability due to ruptured and bulging discs in her back, a compressed sciatic nerve, diabetes, high cholesterol, and a pinched nerve in the cervical region of her spinal cord.  [R. 11-5, Tr. 170; R. 11-6, Tr. 176, 200].

After both disability applications were denied initially, Gross requested a hearing, which took place on November 22, 2013, and included testimony from Gross, her mother (Connie Gross), and a vocational expert ("VE").  [R. 11-2, Tr. 28-75].  In a January 9, 2014 written decision, the ALJ found Gross to be not disabled.  [*Id.*, Tr. 15-23].  The Appeals Council denied review, making the ALJ's decision the final

decision of the Commissioner, and Gross timely filed for judicial review. [*Id.*, Tr. 1-4; R. 1].

### B.   The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1]  Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found.  *Id.*  Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled.  *Id.*  If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity

---

[1] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 1520(c); § 920(c).

("RFC"), and will find the claimant not disabled if he or she can still do past relevant work.  *Id.*  At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work.  *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Gross was not disabled.  At the first step, he found that Gross had not engaged in substantial gainful activity since her alleged onset date.  [R. 11-2, Tr. 18]. At the second step, he found that Gross had the severe impairments of degenerative disc disease, diabetes, radiculopathy[3] and obesity.  [*Id.*]. Next, the ALJ concluded that none of Gross's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  [*Id.*].

Between the third and fourth steps, the ALJ found that Gross had the RFC to perform "light work"[4] with the following restrictions:

---

[3] "Radiculopathy is a condition due to a compressed nerve in the spine that can cause pain, numbness, tingling, or weakness along the course of the nerve."  *See* http://www.medicinenet.com/radiculopathy/article.htm.

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds….[A] job is in this

[S]he requires a sit-stand option at will, can sit or stand for up to one hour at a time provided she is not off-task more than 9% of the work period. She can occasionally stoop, kneel, crouch, crawl and climb ramps or stairs but never climb ladders, ropes or scaffolds. The claimant should avoid hazards such as heights and machinery with moving parts. She can occasionally operate foot controls with her left lower extremity. The claimant can frequently reach, (including overhead) with the upper extremities.

[R. 11-2, Tr. 19]. At step four, the ALJ found that Gross could not perform past relevant work. [*Id.*, Tr. 22]. With the assistance of VE testimony, the ALJ determined at step five that based on Gross's age, education, work experience and RFC, she could perform the positions of cashier, assembler and packer, for which significant jobs existed in the economy. [*Id.*, Tr. 23].

## II.   ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." § 404.1567(b); § 416.967(b).

support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring

6

evidence in the record or failing to follow the treating physician rule are not

harmless.  *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931,

940 (6th Cir. 2011).

Gross argues that the Court should remand the decision for further

administrative proceedings because the ALJ failed to properly consider the

opinion of her treating physician; failed to articulate how he arrived at a

RFC to perform light work; and improperly rejected the testimony of her

mother.  The Court agrees and recommends remand.

## A.

In formulating Gross's RFC, the ALJ gave greater weight to the

opinion of Harold Nims, D.O., a consulting examiner, than to the opinion of

James Guigelaar, M.D., Gross's treating physician.

After a December 2012 consultative examination, Dr. Nims found that

Gross's gait was slightly antalgic to the left, but steady; her lower

extremities had normal function, strength and range of motion, with

negative straight leg raise, but she had no deep tendon reflexes in her legs;

her spine examination was normal; and she was able to walk on her heels,

but she was not able to squat or walk on her toes.  [R. 11-7, Tr. 305-13].

He opined that Gross's ability to stand and walk for prolonged period is

somewhat limited by her lower back pain; that she could stand for 15

7

minutes at a time; and that her ability to bend, stoop, lift, carry, walk, crawl, squat, travel, and push and pull heavy objects was at least moderately limited. [*Id.*, Tr. 309-10].

In a medical source statement dated November 12, 2013, Dr. Guigelaar opined that due to pain, Gross could never stand in a work setting, could sit or walk for 30 minutes at a time each, and would need to lie down at unpredicted intervals three to four times per day. [R. 11-7, Tr. 339-40; R. 13-2, Tr. 402-03].[5] In contrast to Dr. Nims' findings from nearly a year earlier, Dr. Guigelaar indicated that Gross had a reduced range of motion in her spine, no left ankle reflex jerk, left leg weakness, and positive left leg raise at 45 degrees. [R. 11-7, Tr. 339; R. 13-2, Tr. 402].

In assessing Gross's RFC, the ALJ assigned Dr. Guigelaar's opinion "some weight," summarily stating that although his opinion "is supported by physical examination findings … it is not consistent with the evidence as a whole as it relates to the claimant's overall function and course of treatment." [R. 11-2, Tr. 21]. In a similarly conclusory fashion, the ALJ assigned Dr. Nims' earlier opinion "great weight," stating that "to the extent that it shows the claimant's ability to engage in sustained work-related activities," his opinion "is supported by medically acceptable clinical and

---

[5] The two different versions of this medical source statement will be addressed below.

laboratory diagnostic techniques and is consistent with the other substantial evidence." [*Id.*]. The ALJ's one-sentence, conclusory dismissal of Dr. Guigelaar's opinion is patently insufficient under the treating physician rule.

The "treating physician rule" requires that an ALJ give controlling weight to a treating physician's opinion regarding the nature and severity of a claimant's condition when that opinion is well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. If an ALJ gives less than controlling weight to a treating source's opinion, she must provide "good reasons" for doing so that are "supported by the evidence in the case record, and … sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)). "[T]he ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In conducting this analysis, the ALJ

9

may not ignore significant objective evidence in the record. *Minor v.*

*Comm'r of Soc. Sec.*, 513 Fed. Appx. 417, 437 (6th Cir. 2013).

This procedural safeguard not only permits "meaningful appellate

review," but also ensures that claimants "understand the disposition of their

cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation

omitted). The treating physician rule is predicated on the detailed,

longitudinal picture and unique perspective that such sources provide:

> 'Generally, we give more weight to opinions from your treating
> sources, since these sources are likely to be the medical
> professionals most able to provide a detailed, longitudinal
> picture of your medical impairment(s) and may bring a unique
> perspective to the medical evidence that cannot be obtained
> from the objective medical findings alone or from reports of
> individual examinations, such as consultative examinations or
> brief hospitalizations.'

*Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011)

(quoting 20 C.F.R. § 404.1527(d)(2)). For these reasons, a treating

physician's opinion is entitled to great deference in all cases. *Gentry*, 741

F.3d at 723.

Dr. Guigelaar is the epitome of the type of treating physician whose

longitudinal picture brings a unique perspective that cannot be obtained

from objective medical records alone or from consultative examiners.

Gross first saw Dr. Guigelaar in 2001, and beginning in 2003, she treated

with him approximately every four months for diabetes, lower back pain,

and cervical radiculopathy.  [R. 11-7, Tr. 260-78, 314-17, 325-27, 331-33].
After Gross complained of back pain in 2003, Dr. Guigelaar ordered a
lumbar MRI which revealed degenerative disc desiccation, moderate
central and left central disc herniation at L4-L5 and L5-S1, severely
compressed left L5 and S1 nerve root, and degenerative bulging annulus
with mild right central disc herniation at L3-L4 deforming the thecal sac.
[*Id.*, Tr. 301].  Upon Dr. Guigelaar's referral, Gross received epidural
injections from late 2003 through 2006 that helped relieve her back pain,
but her insurance ended and she no longer could receive them.  [*Id.*, Tr.
234-51, 274, 305].  Gross continued seeing Dr. Guigelaar up until the
administrative hearing.

During a July 8, 2013 visit, Gross presented with left leg and foot
numbness, lower back pain radiating to her left leg, left leg weakness and
recurrent instances of her left knee giving out.  [R. 11-7, Tr. 325].  After a
physical examination, Dr. Guigelaar indicated that Gross had abnormal
reflexes and sensation in her left leg, with no left ankle jerk and slight left
lower leg weakness.  [*Id.*, Tr. 326].  The results of an August 8, 2013
lumbar spine MRI showed Gross suffered from degenerative disc disease
at L3-L4, L4-L5, and L5-S1; an annular tear at L3-L4 with a tiny central and
right paramedian disc protrusion; an annular tear at L4-L5 with a focal

11

central disc protrusion and bilateral facet arthropathy resulting in mild spinal stenosis; and mild spinal stenosis and left foraminal stenosis at L5-S1. [*Id.*, Tr. 323-24]. None of this objective evidence from 2013 – after Dr. Nims' examination and opinion – is even mentioned in the ALJ's decision. [*See* R. 11-2, Tr. 19-20].

Dr. Guigelaar referred Gross to a pain management center for injections. On September 28, 2013, pain management physician Sam Morkos, M.D., conducted a physical examination of Gross, finding that she had a moderate limitation in her axial skeletal range of motion in all directions; tender lower thoracic facet joints, a tender lumbar facet joint, and a tender sacroiliac joint; some sensory changes in her left lower extremity; and positive straight leg raise on the left at 20 degrees and the right at 40 degrees. [R. 11-7, Tr. 337-38]. The ALJ mentioned that Dr. Morkos had found "tenderness and limited motion for which injection treatment was provided," but did not describe the full extent of the skeletal limitations, the number of points of tenderness, the sensory changes or the bilateral positive straight leg raising tests. [*See* R. 11-2, Tr. 20].

This evidence constitutes medically acceptable clinical and diagnostic evidence, deeming applicable the treating physician rule. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. And given the long treating

12

relationship, Dr. Guigelaar is the exact type of provider to whom the ALJ should have given great deference; at a minimum, the treating physician rule required that the ALJ provide good reasons and a detailed discussion as to why he was not assigning Dr. Guigelaar's opinion controlling weight.

Instead, the ALJ relied on Dr. Nims' evaluation and opinion, summarily concluding that his opinion was more consistent with the rest of the medical evidence than Dr. Guigelaar's opinion.  During oral argument before this Court, the Commissioner urged that Dr. Nims' contrary opinion provided a good reason for the ALJ to discount the weight given to Dr. Guigelaar's opinion.  But "[n]othing in the regulations indicates, or even suggests, that the administrative judge may decline to give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion."  *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009).  Allowing Dr. Nims' opinion to trump that of Dr. Guigelaar's "would seriously undermine the Commissioner's position that controlling weight ordinarily should be given to the opinion of the treating physician."  *Id.*  Furthermore, in assigning Dr. Nims' opinion great weight, the ALJ failed to acknowledge that Dr. Nims did not have the

13

benefit of the diagnostic evidence from 2013 described by Dr. Guigelaar and Dr. Morkos.[6]

The Commissioner further argues that the Court can infer that the ALJ relied upon Gross's activities of daily living to find that the Dr. Guigelaar's opinion was not supported by the record.  When finding Gross not fully credible, the ALJ cited Gross's ability to prepare meals (microwave dinners, cereal and sandwiches, taking 5 to 10 minutes), shop in stores or by computer (once a week for 30 minutes to an hour), swim (2 to 3 times per month in the summer), read and knit.  [R. 11-2, Tr. 21; R. 11-6, Tr. 186-93].  "Yet these somewhat minimal daily functions are not comparable to typical work activities."  *Rogers*, 486 F.3d at 248.  Nor are they contrary to the limitations imposed by Dr. Guigelaar.  [R. 11-7, Tr. 339; R. 13-2, Tr. 402].  At any rate, the ALJ did not articulate that Gross's activities of daily living supported his decision to give limited weight to Dr. Guigelaar's opinion, and the Court rejects the Commissioner's post-hoc rationalization. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) ("A court cannot excuse the denial of a mandatory procedural protection simply

---

[6] Nor did the ALJ acknowledge Dr. Nims' opinion that Gross could not stand for more than 15 minutes at a time.  [R. 11-7, Tr. 310].  The ALJ does not explain how his RFC assessment that Gross can stand for up to an hour at a time is consistent with the opinion to which he gave great weight.

because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion . . . .").

The ALJ failed to analyze any of the required factors and failed to articulate good reasons for giving less than controlling weight to Dr. Guigelaar's opinion.  The ALJ's lack of analysis prevents the Court from conducting a "meaningful appellate rule," such that substantial evidence does not support his decision.  The Court should "not hesitate to remand" when, as here, the ALJ's opinion "do[es] not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion."  *Cole*, 661 F.3d at 939 (internal quotation marks and citation omitted).

**B.**

Gross says the ALJ improperly rejected the testimony of her mother, Connie Gross.  The ALJ's reasons for dismissing Ms. Gross's testimony were: (1) "Since Ms. Gross is not medically trained to make exacting observations as to dates, frequency, types and degrees of medical signs and symptoms, the accuracy of the testimony is questionable"; (2) "[B]y virtue of her relationship as the claimant's mother, the witness cannot be considered a disinterested third party witness whose testimony would not tend to be colored by affection for the claimant and natural tendency to agree with the symptoms and limitation the claimant alleges"; and (3) "Most

15

importantly, significant weight cannot be given to the witness testimony because it, like the claimant's is simply not consistent with the preponderance of the opinions and observations by physicians."  [R. 11-2, Tr. 21].  During oral argument, Gross described these reasons as "cut and paste boilerplate" devoid of factual support.  The Court agrees.

Pursuant to 20 C.F.R. §§ 404.1513(d)(4) and 416.913(d)(4), an ALJ may consider non-medical sources including family members and friends. "If lay witness testimony is provided, the ALJ cannot disregard it without comment, and must give reasons for not crediting the testimony that are germane to each witness." *Maloney v. Comm'r of Soc. Sec.*, 480 Fed. Appx. 804, 810 (6th Cir. 2012).  Nonetheless, an ALJ's insufficient consideration of lay witness testimony is harmless error unless it would affect the disability decision and is fully supported by the reports of treating physicians. *Id.*; *Simons v. Barnhart*, 114 Fed. Appx. 727, 733 (6th Cir. 2004).

The ALJ did not give reasons for discrediting Ms. Gross's testimony that are germane specifically to her; his boilerplate language could apply to any lay witness.  Further, a lay witness's lack of medical training and close relationship with a claimant are not enough to disregard her testimony. Otherwise, §§ 1513(d)(4) and 913(d)(4), which specifically allow

16

consideration of testimony by lay witnesses who are close to the claimant, would be meaningless.

Further, despite her lack of medical training, Ms. Gross is more than qualified to offer accurate testimony regarding what she helps her daughter with and what she observes her daughter doing on a daily basis – especially since they live together.  To that effect, Ms. Gross testified that Gross spent "a lot of time in bed," she tripped and fell three weeks before the hearing, and she cries for "hours and hours a day" in pain.  [R. 11-2, Tr. 60-62, 64].  Ms. Gross further stated that she does Gross's laundry and pretty much everything else around the house, and she washes Gross's hair and back and shaves her legs.  [*Id.*, Tr. 66].

Finally, the ALJ failed to articulate how Ms. Gross's testimony differed from the opinions and observations of physicians.  To the contrary, Ms. Gross's testimony that her daughter experiences significant pain that affects her mobility appears to be fully supported by the opinions and records of Dr. Guigelaar and Dr. Morkos, deeming the ALJ's error in assessing Ms. Gross's testimony not harmless.  *Maloney*, 480 Fed. Appx. at 810; *Simons*, 114 Fed. Appx. at 733.

17

If, on remand, the ALJ determines that Ms. Gross's testimony lacks credibility, he should be required to support that conclusion with sufficiently specific reasoning to allow for meaningful review.  *Maloney,* 480 Fed. Appx. at 810; *Rogers*, 486 F.3d at 248.

### C.

As a final note, the Court will address the two different versions of Dr. Guigelaar's medical source statement.  [*Compare* R. 11-7, Tr. 339-40, *with* R. 13-2, Tr. 402-03].  At the beginning of the hearing before the ALJ, Gross's attorney asked if the ALJ had received a better copy of the medical source statement, as portions of it that had been previously scanned and entered in the record did not come through.  [R. 11-2, Tr. 30-31].  The ALJ acknowledged having received the corrected copy.  [*Id*.].  Nonetheless, the uncorrected copy is included in the official transcript that was filed with this Court.  [11-7, Tr. 339-40].  Gross therefore included the corrected copy as an exhibit to her motion for summary judgment.  [R. 13-2, Tr. 402-03].

In its motion, the Commissioner described the corrected copy of the medical source statements as extra-record evidence that was submitted well after the administrative process.  [R. 15, PgID 421].  During oral argument, the Commissioner first stated that the corrected copy was not any different, but even after it was pointed out that the transcript copy

18

omitted answers to questions 2 through 4, and even after the

Commissioner acknowledged that the it appeared from the record that the

ALJ had reviewed the corrected copy, the Commissioner objected to the

Court considering the corrected copy.  The Commissioner described the

corrected copy as "new evidence" requiring remand analysis under

sentence six of § 405(g).[7]

The Commissioner is incorrect, as a remand due to an incomplete

record would be pursuant to sentence four of § 405(g) as it implicates the

agency's obligation to follow its own procedures.  *Hollon ex rel. Hollon v.

Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2006); *Jones v. Comm'r

of Soc. Sec.*, No. 1:10-CV-164, 2011 WL 1527159, at *8-10 (E.D. Tenn.

Apr. 4, 2011), *report and recommendation adopted*, No. 1:10-CV-164, 2011

WL 1526978 (E.D. Tenn. Apr. 20, 2011).  "[A]n incomplete or imperfect

transcript can justify remand only if the claimant was prejudiced on the

merits."  *Jones*, 2011 WL 1527159 at *10.

Given the above cited reasoning for remanding on other grounds, it is

not necessary to determine whether remand would be justified due to the

incomplete copy of the medical source opinion at issue.  However, the

---

[7] Sentence six of the Act permits remand only where a subsequent
adjudicator is presented with "new evidence which is material and that
there is good cause for the failure to incorporate such evidence in to the
record in a prior proceeding."  42 U.S.C. § 405(g).

19

Court will note that the corrected copy includes the duration and frequency of the treating relationship and a complete list of Gross's diagnoses, while the transcript copy does not.  [R. 11-7, Tr. 339; R. 13-2, Tr. 402].  These are relevant factors for determining the supportability of Dr. Guigelaar's opinion.  *Gentry*, 741 F.3d at 723.  The "treating physician rule occupies a special place in social security cases," *Rabbers*, 582 F.3d at 656, and a record that omits relevant information pertaining a treating physician's opinion deserves heightened scrutiny.  The ALJ should be ordered to review Dr. Guigelaar's complete medical source statement on remand.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Gross's motion to remand [R. 13] be **GRANTED**, the Commissioner's motion for summary judgment [R. 15] be **DENIED**, and the Commissioner's decision be **REMANDED** for further proceedings consistent with this report and recommendation.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: June 8, 2016

20

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

the same order and labeled as "Response to Objection #1," "Response to

Objection #2," etc.  The response must be **concise and proportionate in**

21

**length and complexity to the objections**, but there is otherwise no page

limitation.  If the Court determines that any objections are without merit, it

may rule without awaiting the response.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 8, 2016.

s/Marlena Williams____
MARLENA WILLIAMS
Case Manager
